1

2                        UNITED STATES DISTRICT COURT

3                        NORTHERN DISTRICT OF CALIFORNIA

4

5    BNSF LOGISTICS, LLC,

6             Plaintiff,                          No. C 11-5810-PJH

7        v.                                       **ORDER GRANTING DEFENDANT'S
                                                  MOTION TO DISMISS**
8    L&N EXPRESS, INC.,

9             Defendant.

10   _____/

11
         Before the court is a motion to dismiss filed by defendant L&N Express, Inc. ("L&N").
12
     For the reasons stated below, L&N's motion to dismiss is GRANTED.
13
                                        **BACKGROUND**
14
         Plaintiff BNSF Logistics, LLC ("BNSF") is a transportation intermediary that assists
15
     customers with transportation logistics.  See Complaint, ¶ 1.  L&N is a common carrier.
16
     See ¶ 2.  In November 2010, BNSF and L&N executed a Broker/Carrier Agreement, under
17
     which L&N agreed to provide transportation services to BNSF's customers.  See ¶ 5.  L&N
18
     identified Nathan Tran as its representative and provided an email address to BNSF for
19
     communications regarding shipments.  See Id.
20
         BNSF alleges that on or about March 9, 2011, an individual identifying himself as
21
     "Garik" and claiming to represent L&N called BNSF regarding a spot contract for the
22
     shipment of a load of Fisher Price products.[1]  See ¶ 6.  The next day, BNSF sent a rate
23
     confirmation email to the email address provided by L&N.  L&N did not respond to the
24

     _____

25       [1] In construing the complaint and BNSF's opposition liberally, the court notes that BNSF
     does not allege any kind of connection between Garik and L&N's designated representative,
26   Mr. Tran, or any facts from which the court could infer such a connection.  Specifically, BNSF
     does not allege whether Garik worked for or represented Mr. Tran, only that he claimed to
27   represent L&N.  Based on that claim, BNSF released both shipments to Garik notwithstanding
     that he had not been identified by L&N as its representative.  As BNSF alleges in its
28   opposition, Garik "was a thief who had absconded with both shipments."  See Complaint, ¶ 5-
     6; BNSF's opposition at 2.

1

2

3   email.  On March 11, 2011, Garik picked up the Fisher Price load in California.  The load

4   was never delivered and has not been found since.

5          On March 14, 2011, Garik called BNSF again and arranged to pick up a load of

6   Proctor and Gamble products in California.  <u>See</u> ¶ 7.  Like the Fisher Price products, the

7   Proctor and Gamble products were never delivered and has not been found since.  From

8   March 10th to March 16th, L&N did not respond to BNSF's March 10th confirmation email.

9   BNSF later learned that L&N had stopped using Mr. Tran prior to these two shipments but

10  had not informed BNSF of this change.  <u>See</u> ¶ 8.

11         The consignee of the two shipments, Amazon.com, made claims against BNSF for

12  the invoice value of the goods - $70,925.00 for the Fisher Price shipment and $41,662.92

13  for the Proctor and Gamble shipment (totaling $112,587.92).  BNSF paid both claims.[2]  <u>See</u>

14  ¶ 9.

15         Based on these facts, BNSF alleges that L&N failed to inform BNSF of the change in

16  L&N's representative and failed to respond to BNSF's March 10th email.  BNSF seeks

17  equitable indemnity, total or partial contribution, and declaratory relief.

18         To that end, BNSF filed the instant action in Sacramento Superior Court on October

19  25, 2011.  On November 30, 2011, L&N removed the action to federal court, asserting that

20  BNSF's state law claims are preempted by two federal statutes: (1) the Carmack

21  Amendment to the Interstate Commerce Act (49 U.S.C. § 14706) ("Carmack Amendment")

22  and (2) the Interstate Commerce Commission Termination Act (49 U.S.C. § 14501)

23  ("ICCTA").

24         L&N filed a motion to dismiss for failure to state facts upon which relief can be

25  granted on December 7, 2011.  On December 21, 2011, BNSF filed an opposition brief,

26  _____

27         [2] According to L&N, both shipments were destined for interstate shipment.  <u>See</u> L&N's
    motion to dismiss at 1.  The first shipment of Fisher Price products was picked up in San
28  Bernardino, California and was destined for Carlisle, Pennsylvania.  The second shipment of
    Proctor and Gamble products was picked up in Oxnard, California and was destined for
    Fernley, Nevada.

1  contending that L&N's motion to dismiss should be denied and alternatively, that the case

2  should be remanded to the state court.  According to the opposition brief, BNSF intends to

3  file a motion to remand in due time.  L&N filed its reply on December 28, 2011.  The

4  hearing was vacated and the matter was taken under submission when BNSF requested a

5  continuance of the February 8, 2012 hearing date to a date that was not available.

**DISCUSSION**

7  A.    Legal Standard

8       A motion to dismiss under Rule 12(b)(6) tests for the legal sufficiency of the claims

9  alleged in the complaint.  Ileto v. Glock, Inc., 349 F.3d 1191, 1199-1200 (9th Cir. 2003).

10  Review is limited to the contents of the complaint.  Allarcom Pay Television, Ltd. v. Gen.

11  Instrument Corp., 69 F.3d 381, 385 (9th Cir. 1995).  To survive a motion to dismiss for

12  failure to state a claim, a complaint generally must satisfy only the minimal notice pleading

13  requirements of Federal Rule of Civil Procedure 8.

14       Rule 8(a)(2) requires only that the complaint include a "short and plain statement of

15  the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  Specific

16  facts are unnecessary – the statement need only give the defendant "fair notice of the claim

17  and the grounds upon which it rests.  Erickson v. Pardus, 551 U.S. 89, 93 (citing Bell

18  Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  All allegations of material fact are

19  taken as true.  Id. at 94.  However, a plaintiff's obligation to provide the grounds of his

20  entitlement to relief "requires more than labels and conclusions, and a formulaic recitation

21  of the elements of a cause of action will not do."  Twombly, 550 U.S. at 555 (citations and

22  quotations omitted).  Rather, the allegations in the complaint "must be enough to raise a

23  right to relief above the speculative level.  Id.

24       A motion to dismiss should be granted if the complaint does not proffer enough facts

25  to state a claim for relief that is plausible on its face.  See id. at 558-59.  "[W]here the well-

26  pleaded facts do not permit the court to infer more than the mere possibility of misconduct,

27

28

3

1    the complaint has alleged-but it has not show[n] that  the pleader is entitled to relief.

2    Ashcroft v. Iqbal, __ U.S. __, 129 S.Ct. 1937, 1950 (2009).

3            In addition, when resolving a motion to dismiss for failure to state a claim, the court

4    may not generally consider materials outside the pleadings.  Lee v. City of Los Angeles,

5    250 F.3d 668, 688 (9th Cir. 2001).  There are several exceptions to this rule.  The court

6    may consider a matter that is properly the subject of judicial notice, such as matters of

7    public record.  Id. at 689; see also  Mack v. South Bay Beer Distributors, Inc., 798 F.2d

8    1279, 1282 (9th Cir. 1986) (on a motion to dismiss, a court may properly look beyond the

9    complaint to matters of public record and doing so does not convert a Rule 12(b)(6) motion

10   to one for summary judgment).  Additionally, the court may consider exhibits attached to

11   the complaint, see Hal Roach Studios, Inc. V. Richard Feiner & Co., Inc., 896 F.2d 1542,

12   1555 n.19 (9th Cir. 1989), and documents referenced by the complaint and accepted by all

13   parties as authentic.  See Van Buskirk v. Cable News Network, Inc., 284 F.3d 977, 980 (9th

14   Cir. 2002).

15   B.     Legal Analysis

16           As construed by the parties and the court, the complaint alleges a breach of contract

17   claim and a negligence claim.  These claims raise the following overarching issues for

18   disposition: (1) whether the Carmack Amendment preempts BNSF's claims; and (2)

19   whether the ICCTA preempts BNSF's claims.

20           1.     Whether the Carmack Amendment preempts BNSF's state law claims

21           In response to varying legislative and judicial views on a carrier's responsibility

22   during interstate transportation, Congress passed the Carmack Amendment to provide a

23   "uniform national liability policy for interstate carriers."  Hall v. N. Am. Van Lines, Inc., 476

24   F.3d 683, 687 (9th Cir. 2007) (quoting Hughes Aircraft Co. v. N. Am. Van Lines, Inc., 970

25   F.2d 609, 613 (9th Cir. 1992)).  Under the Carmack Amendment, 49 U.S.C. § 14706, a

26   shipper can recover for loss or damage to its property caused by any interstate carrier

27

28

                                                         4

1    involved in the transporting of the shipper's property.[3]

2          In multiple opinions, the Supreme Court has interpreted the Carmack Amendment as

3    broadly preempting state law claims arising from failures in the interstate transportation of

4    goods.  See Adams Express Co. v. Croninger, 226 U.S. 491, 505-06 (1913) ("[The

5    Carmack Amendment] embraces the subject of the liability of the carrier under a bill of

6    lading which he must issue . . . Almost every detail of the subject is covered so completely

7    that there can be no rational doubt but that Congress intended to take possession of the

8    subject, and supersede all state regulation with reference to it.").  See also Ga., Fla. & Ala.

9    Ry. Co. v. Blish Milling Co., 241 U.S. 190, 196 (1916) (The language of the Carmack

10   Amendment is "comprehensive enough to embrace responsibility for all losses resulting

11   from any failure to discharge a carrier's duty as to any part of the agreed transportation . . .

12   ");  N.Y., Philadelphia, & Norfolk R.R. Co. v. Peninsula Product Exch. of Md., 240 U.S. 34

13   (1916);  Se. Express Co. v. Pastime Amusement Co., 299 U.S. 28 (1936).

14         The Ninth Circuit has also held that the Carmack Amendment preempts breach of

15   contract claims.  In Hall, the Ninth Circuit held that the Carmack Amendment preempted a

16   contract claim alleging refusal to deliver.  476 F.3d at 688.  There, the plaintiff shipper

17   contracted with the defendant carrier to ship her household goods from California to

18   Montana.  Id. at 685.  The defendant refused to deliver her goods until she made certain

19   payments.  Id.  After additional delays, the plaintiff convinced the defendant to release her

20   goods in California for an additional payment.  Id. at 686.  The plaintiff filed suit in California

21   state court and alleged, among other claims, breach of contract.  Id.

22   _____

[3] The exact statutory language is as follows:

23

**Motor carriers and freight forwarders** - A carrier providing transportation or
24   service . . . shall issue a receipt or bill of lading for property it receives for
     transportation under this part.  That carrier and any other carrier that delivers the
25   property and is providing transportation or service . . . are liable to the person
     entitled to recover under the receipt or bill of lading.  The liability imposed under
26   this paragraph is for the actual loss or injury to the property caused by (A) the
     receiving carrier, or (B) the delivering carrier . . . Failure to issue a receipt or bill
27   of lading does not affect the liability of a carrier.

28   49 U.S.C. § 14706

5

1    The Ninth Circuit preliminarily noted that the Carmack Amendment is the "exclusive
2    cause of action for interstate-shipping contract claims alleging loss or damage to property."
3    Id. at 688.  Because the precipitating event for the breach of contract claim, the carrier's
4    refusal to deliver, was a matter of first impression for the Ninth Circuit, the court turned to a
5    Fifth Circuit case, Moffit v. Bekins Van Lines Co., 6 F.3d 305, 306-07 (5th Cir. 1993), for
6    guidance.  Id.  In Moffit, the Fifth Circuit held that the Carmack Amendment preempted a
7    contract claim alleging the late delivery of goods, even without loss or property damage.  Id.
8    The Ninth Circuit agreed with the Fifth Circuit that allowing the plaintiff to allege "finer
9    distinctions between types of contract damages" would undermine the purpose of the
10   Carmack Amendment.  Id.; see also Smallwood v. Allied Van Lines, Inc., 660 F.3d 1115,
11   1120 (9th Cir. 2011) (Plaintiff's breach of contract claim, arising from defendant's failure to
12   detect that a shipment of firearms would violate international law, was preempted by the
13   Carmack Amendment because the breach "plainly [arose] from an interstate shipping
14   contract. . . .").

15   Here, L&N argues that the Carmack Amendment preempts BNSF's breach of
16   contract claim because BNSF's allegations flow from the Broker/Carrier Agreement and the
17   Carmack Amendment's preemption provision has been broadly interpreted.  BNSF
18   responds that no preemption occurs, because its contract claim is not premised on any
19   rendering of services by L&N.  Rather, it is premised on allegations that have not been
20   previously preempted, namely L&N's failures to update its contact information and to
21   respond to BNSF's email.

22   On balance, and like the plaintiff shippers in the above cases, the court concludes
23   that BNSF's contract claim flows directly from the Broker/Carrier Agreement with L&N.
24   Pursuant to this agreement, BNSF seeks to hold L&N liable for the loss of the two
25   shipments.  BNSF's claim falls squarely within the preemptive ambit of the Carmack
26   Amendment.  Moreover, BNSF's attempt to allege "finer distinctions" between types of
27   contract damages, as did the plaintiffs in Hall and Moffit, is not only contrary to the purpose
28

of the Carmack Amendment but illogical.  The duty to inform the shipper of changes in important personnel and to promptly respond to communications regarding shipments is an important part of a carrier's service.  Within the context of a carrier's service, this duty is not any less important than the duty to deliver the goods in a timely manner, or the duty to not lose the goods.  Moreover, Supreme Court and Ninth Circuit precedent compels the conclusion that BNSF's contract claim is related to L&N's carrier services, pursuant to the Broker/Carrier Agreement.  See Adams Express Co., 226 U.S. at 505-06; Blish Milling Co., 241 U.S. at 196; Hall, 476 F.3d at 688; Smallwood, 660 F.3d at 1120.

Accordingly, the court GRANTS L&N's motion to dismiss BNSF's breach of contract claim.

With respect to the negligence claim, the Ninth Circuit has also held that the Carmack Amendment preempts negligence claims.[4]  Hughes Aircraft Co., 970 F.2d at 614. In Hughes Aircraft Co., a mainframe computer was damaged during interstate transportation.  Id. at 611.  The plaintiff shipper sued the defendant carrier for state law negligence.  Id.  The Ninth Circuit held that the Carmack Amendment preempted any state common law action, including a negligence claim.  Id.  at 613.  Other circuits have made similar findings.  See Smith v. United Postal Service, 296 F.3d 1244, 1249 (11th Cir. 2002) (The Carmack Amendment preempted the plaintiffs' negligence claim because it arose from the defendant's failure to deliver their packages.); Moffit, 6 F.3d at 307 (The Carmack Amendment preempted the negligence claim alleging untimely delivery of goods because to hold otherwise would defeat the purpose of the statute, which was to  "create uniformity out of disparity.").  The Supreme Court has also concluded that a shipper's negligence claim arising from a failure to deliver the goods in a timely manner was preempted by the Carmack Amendment.  Pastime Amusement Co., 299 U.S. at 29.

---

[4] To the extent that the complaint can be construed as alleging a negligence claim based on a free standing duty that is independent of any contract, such a claim is untenable because as noted by the Ninth Circuit in Hughes Aircraft Co., most carriers sign contracts when they transport goods across state lines.  970 F.2d at 614.  This is not surprising because the carrier cannot limit its liability unless it is in writing.  Id.

1    The same analysis that applies to the breach of contract claim, applies to the
2  negligence claim as well.  The allegations that support a negligence claim flow from the
3  Broker/Carrier Agreement.  This agreement imposes a duty on L&N to fulfill its obligations,
4  including a duty to inform BNSF of personnel changes and to respond to communications.
5  Because L&N failed to discharge its duty, BNSF seeks to hold L&N liable for the loss of the
6  two shipments.  While BNSF argues that its negligence claim is distinguishable from those
7  in the cited cases, the court disagrees.

8    The court accordingly GRANTS L&N's motion to dismiss BNSF's negligence claim,
9  as well as its contract claim.  The dismissal is without prejudice to BNSF's ability to allege a
10  claim or claims pursuant to the Carmack Amendment.

11    2.    Whether the ICCTA preempts BNSF's state law claims

12    Although the court does not need to consider whether the ICCTA preempts BNSF's
13  claims in view of the foregoing analysis, the court does so nonetheless.

14    The ICCTA, 49 U.S.C. § 14501(c)(1), states that "a state may not enact or enforce a
15  law, regulation, or other provision having the force and effect of law related to a price,
16  route, or service of any motor carrier."  The Supreme Court recently interpreted the ICCTA
17  preemption provision broadly.  Rowe v. N.H. Motor Transp. Ass'n, 522 U.S. 364, 367
18  (2008).  In Rowe, the Court considered whether the ICCTA preempted a Maine statute that
19  attempted to regulate the delivery of tobacco to customers in Maine.  Id.  The Court noted
20  that the preemption provision was modeled after the preemption provision in the Airline
21  Deregulation Act of 1978 (49 U.S.C. § 41713(b)(4)) ("ADA").  Id.  Consequently, the Court
22  looked to its previous decision in Morales v. Trans World Airlines, 504 U.S. 374 (1992), in
23  which the Court interpreted the ADA's preemption provision.  Id. at 370.  Given the Morales
24  holding, the Court determined that: (1) state enforcement actions "having a connection with,
25  or reference to" carrier rates, routes, or services are preempted; (2) preemption may occur
26  even if a state law's effect on rates, routes, or services is indirect; (3) it does not matter
27  whether a state law is consistent or inconsistent with federal regulation; (4) preemption

28

1   occurs at least where state laws have a "significant impact" related to Congress'

2   deregulatory and preemption related goals; and (5) there is no preemption if the state laws

3   affect the rates, routes, or services in only a "tenuous, remote, or peripheral" manner.  Id.

4   The Court held that the ICCTA (along with the Federal Aviation Administration Authorization

5   Act of 1994) preempted the Maine statute.  Id. at 367.

6          BNSF contends that the ICCTA does not preempt its claims because on a general

7   level, its claims "have nothing whatsoever to do with the interstate transportation of any

8   goods, or with any transportation services rendered by L&N."  See BNSF's opposition at

9   12.  BNSF further contends that L&N's failure to respond to its email does not have any

10  connection with or effect on L&N's rates, routes, or services, much less exceed the

11  "tenuous, remote or peripheral" minimum.  While L&N's failure to respond to BNSF's email

12  on its own may not have a connection with L&N's rates, routes, or service in more than a

13  tenuous, remote or peripheral manner, however, it is only a piece of the picture.  At a

14  minimum, L&N's failures to respond to the email and to inform BNSF of changes in its

15  personnel indirectly references L&N's services as a carrier because BNSF relied on the

16  Broker/Carrier Agreement when it released the products to Garik.  The loss of the two

17  shipments, for which BNSF is seeking indemnity and contribution from L&N, affects L&N's

18  service in more than a tenuous, remote, or peripheral manner.

19         Accordingly, the court GRANTS L&N's motion to dismiss BNSF's state law claims.

20  The dismissal is without prejudice to BNSF's ability to re-allege its claims pursuant to the

21  ICCTA.

22                                        **CONCLUSION**

23         For the reasons stated above, the court hereby dismisses the claims asserted

24  against L&N - breach of contract and negligence claims - without prejudice.  BNSF may file

25  a first amended complaint within 28 days of the date of this order, alleging claims under the

26

27

28

1   Carmack Amendment and/or the ICCTA, as appropriate.

2   **IT IS SO ORDERED.**

3   Dated: February 16, 2012

4   _____
    PHYLLIS J. HAMILTON
5   United States District Judge

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28